UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    JACOB FATH,                                                 Case No. 09-21637-dob
                                                                    Chapter 13 Proceeding
            Debtor.                                       Hon. Daniel S. Opperman
_____/

## OPINION REGARDING OBJECTION OF DEBTOR
## TO CLAIM OF KRYSTIN BURLINGAME-FATH

### Introduction

      The Debtor, Jacob Fath, filed his Chapter 13 petition with this Court, as well as a proposed Chapter 13 Plan. His ex-wife, Krystin Burlingame-Fath, filed a claim in the amount of $7,344.22 claiming priority as a domestic support obligation under 11 U.S.C. § 507(a)(1)(A) or (B). The Debtor objected to the proof of claim and Ms. Burlingame-Fath responded to the Debtor's objection. The Court held evidentiary hearings regarding this matter on January 8, 2010, and February 12, 2010, and took this matter under advisement. For the reasons stated in this Opinion, the Court sustains the objection of the Debtor.

### Statement of Facts

      The Debtor and Ms. Burlingame-Fath were married for approximately one year, but divorced pursuant to a Judgment of Divorce entered by the Midland County Circuit Court on December 5, 2008. The Judgment of Divorce contained the following relevant terms for purposes of this Opinion:

#### ALIMONY

      IT IS FURTHER ORDERED AND ADJUDGED that neither party shall be entitled to alimony, the Court being of the opinion that both parties are well, able-bodied and capable of gainful employment.

1

## FINANCIAL OBLIGATIONS

IT IS FURTHER ORDERED AND ADJUDGED that each party shall be responsible for any and all financial obligations incurred by the respective party, from and after March 29, 2008, accept [sic] as otherwise ordered in this judgment.

IT IS FURTHER ORDERED AND ADJUDGED that each of the parties shall assume 50% of the electric bill accrued prior to moving out March 29, 2008, in the amount of $434.20 under the name of the parties. And hold neither party harmless there from.

IT IS FURTHER ORDERED AND ADJUDGED that each of the parties shall assume 50% of the $6,000 rental arrearage at the time of Plaintiff moving out on March 29, 2008, in the amount of $3,000 each, under the names of the parties and holds neither party harmless there from.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff shall assume 25% of the $439.59 cell phone bill in the amount of $110. In which there were four cell phones billed for, the Plaintiff's, the Defendant's and the Defendant's two sons.

IT IS FURTHER ORDERED AND ADJUDGED that the Defendant shall assume 75% of the cell phone bill in the amount of $329.59, Under the names of the parties, and hold the Plaintiff harmless there from.

IT IS FURTHER ORDERED AND ADJUDGED that the Defendant shall assume the $127.00 Propane bill which was accrued after the Plaintiff moved out, under the names of the parties, and hold the Plaintiff harmless there from.

IT IS FURTHER ORDERED AND ADJUDGED that each of the parties shall assume half of the $500 loan from Aunt Dee toward the Wedding, in the amount of $250 each.

IT IS FURTHER ORDERED AND ADJUDGED that each of the parties shall assume 50% of Personal Loan owed to Bill Bayloft, in the amount of $750 each.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff shall assume 100% of the loan from Krystin's father for Jail costs, in the amount of $550.00, under the names of the parties, and hold the Defendant harmless there from.

IT IS FURTHER ORDERED AND ADJUDGED that the Defendant shall assume 100% of the vehicle loan from her father, in the amount of $1,500.00, under the names of both parties, and holds the Plaintiff harmless there from.

IT IS FURTHER ORDERED AND ADJUDGED that each of the parties shall assume 50% of a $3000 loan and a $1200 loan also from Kristin's [sic] father, in the

amount of $2100 each, under the names of both parties.

IT IS FURTHER ORDERED AND ADJUDGED that the Defendant pay 100% for a sump pump she purchased after the Plaintiff had moved out, in the amount of $340, under the names of both parties and holds the Plaintiff harmless there from.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff pay the Defendant for the cost of his GED, in the amount of $100, under the names of both parties and holds the Defendant harmless there from.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff pay the Defendant for Drivers responsibility fee, in the amount of $200, under the names of both parties and holds the Defendant harmless there from.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff shall assume the payment of 50% from the Suburban that the Plaintiff junked out, in the amount of $200, under the name of both parties and holds the Defendant harmless there from.

As early as February, 2009, Ms. Burlingame-Fath initiated actions to force the Debtor to pay his financial obligations to her. On February 20, 2009, the Midland County Circuit Court ordered the Debtor to pay $400 per month to Ms. Burlingame-Fath payable on the first day of each month commencing March 1, 2009. The Court also noted:

"If prop[erty] settlement changed to spousal support then [sic] Court will have arrest

powers."

On March 20, 2009, the Midland County Circuit Court entered an Order stating:

"(1) Def[endant] has paid $6000 of Pl[aintiff]'s indebtedness; (2) If Pl[aintiff] files bankruptcy his property settlement could be converted to spousal support."

A few days later, the Midland County Circuit Court entered another Order dated March 24, 2009, referencing the March 20, 2009, Order and indicated:

"Property settlement is converted to spousal support."

On April 3, 2009, the Midland County Circuit Court likewise stated in an Order:

"Pl[aintiff] is current w/payments. Court will not find Pl[aintiff] in contempt. He must stay current w/payments.

3

Converted to spousal support only if he files bankruptcy."

Finally, on May 29, 2009, after the Debtor filed the instant Chapter 13 petition, the Midland County Circuit Court entered an Order stating:

"Pl[aintiff] has filed bankruptcy. Anything further is in Bay City."
"Def's motion to convert property settlement to spousal support must do a determination in bankruptcy court for support."

Ms. Burlingame-Fath claims that the amounts owed to her constitute a domestic support obligation which cannot be excepted from discharge under 11 U.S.C. § 523(a)(5) pursuant to 11 U.S.C. § 1328(a)(2). The Debtor disagrees.

## Statement of Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), as well as 11 U.S.C. § 1325. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## Applicable Statute

Section 1322(a)(2) states:

(a) The plan shall–

****
    (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

Section 507(a)(1) states, in relevant part:

(a) The following expenses and claims have priority in the following order:

(1) First:

(A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be

4

> applied and distributed in accordance with applicable nonbankruptcy law.
>
> (B) Subject to claims under subparagraph (A), allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition, are assigned by a spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative to a governmental unit (unless such obligation is assigned voluntarily by the spouse, former spouse, child, parent, legal guardian, or responsible relative of the child for the purpose of collecting the debt) or are owed directly to or recoverable by a governmental unit under applicable nonbankruptcy law, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law.

The term "domestic support obligation" is defined in the Bankruptcy Code at Section 101(14A), which states:

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
> (i) a separation agreement, divorce decree, or property settlement agreement;
>
> (ii) an order of a court of record; or
>
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or

> such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Accordingly, whether or not the claim of Ms. Burlingame-Fath is entitled to priority is dependant upon whether such constitutes a "domestic support obligation as that term is defined by the Bankruptcy Code.

"'The terms "alimony" and "support" are given a broad construction to promote the Congressional policy that favors enforcement of obligations for spousal and child support.' 'Congressional policy concerning § 523(a)(5) has always been to ensure that genuine support obligations would not be dischargeable.'" *Goans v. Goans (In re Goans)*, 271 B.R. 528, 531-532 (Bankr. E.D. Mich. 2001) (quoting *Bailey v. Bailey (In re Bailey)*, 254 B.R. 901, 905 (B.A.P. 6th Cir. 2000) (quoting *Hayes v. Hayes (In re Hayes)*, 235 B.R. 885, 891 (Bankr. W.D. Tenn. 1999) (internal citations omitted))). The rationale favoring a liberal construction for the term "support" in the former § 523(a)(5) seems equally applicable to its BAPCPA replacement contained in § 101(14A).

The absence of specific language designating an obligation as alimony, maintenance, or support does not foreclose a finding that an obligation is in fact such. *See*, *e.g.*, *Calhoun v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir. 1983); *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517 (6th Cir. 1993); *Harvey v. McClelland (In re McClelland)*, 247 B.R. 423, 426 (Bankr. N.D. Ohio 2000) ("[I]n cases such as this, where the state court has not specifically labeled an obligation as support, this Court must look behind the award that is made under state law and make an independent factual inquiry to determine whether the award is actually in the nature of support.").

In *Calhoun*, the Sixth Circuit established an analytical framework for determining when an obligation, not specifically designated as alimony, maintenance, or support, is nonetheless in the nature of support and therefore non-dischargeable. This four-step analysis is as follows:

> First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law.

*In re Fitzgerald*, 9 F.3d at 520 (citing *Calhoun*, 715 F.2d at 1109-10).

The burden of proving the obligations at issue are in the nature of support is on the creditor, who must first show that it was the intent of the parties or the state court to create a support obligation. *Id.*

> In determining intent, the bankruptcy court may consider any relevant factors, including: the nature of the obligation; the structure and language of the divorce decree; whether other lump sum or periodic payments were also provided; the length of the marriage; the relative earning powers of the parties; the age, health and work skills of the parties; the adequacy of support absent the obligation in question; and evidence of negotiation or other understandings as to the intended purpose of the obligations.

*Goans v. Goans (In re Goans)*, 271 B.R. 528, 533 (Bankr. E.D. Mich. 2001).

In this case, a review of the various Orders of the Midland County Circuit Court, as well as the transcripts of the hearing make it clear that the Midland County Circuit Court determined that the Debtor owed $7,344.22 to Ms. Burlingame-Fath. Although the Debtor attempted to challenge this determination at the evidentiary hearings, a review of the evidence, as well as the determinations made in the Midland County Circuit Court leave this Court to conclude that sufficient basis exists to conclude that the Midland County Circuit Court made the necessary analysis to determine the amount owed by the Debtor to Ms. Burlingame-Fath.

It is also clear that the Judgment of Divorce clearly did not award alimony to either the Debtor or Ms. Burlingame-Fath, having made the determination that both parties are well, able-bodied and capable of gainful employment. Likewise, the obligations that the Midland County Circuit Court determined as owed to Ms. Burlingame-Fath by the Debtor were labeled "financial

obligations". A review of the Judgment of Divorce, and all subsequent transcripts after the Judgment of Divorce, make it clear that the Midland County Circuit Court concluded that these amounts were owed to Ms. Burlingame-Fath, but that there was never a determination that these amounts constituted alimony, support, or maintenance as contemplated by 11 U.S.C. § 101 (14A). In particular, many of the financial obligations owed by the Debtor to Ms. Burlingame-Fath were the reimbursement of obligations incurred by both parties during their short marriage. A review of the Judgment of Divorce and various Orders of the Midland County Circuit Court, lead this Court to the conclusion that the financial obligations, as identified in the Judgment of Divorce, were not, never were, and never will be either alimony, maintenance, or support as required under the Bankruptcy Code.

This is especially true given the short marriage between the Debtor and Ms. Burlingame-Fath. No children resulted from this marriage and it appears to the Court that both Ms. Burlingame-Fath and the Debtor are approximately equally capable of earning sufficient money to support themselves. Also given the short period of the marriage, it is not possible that Ms. Burlingame-Fath became accustomed to a standard of living significantly different from that which she already enjoyed.

Applying the *Calhoun* standards, the Court finds no evidence that the state court or the parties intended to create a support obligation, and there is likewise no evidence that the "financial obligations" are disguised support or maintenance.

## Conclusion

The Court concludes that the Debtor is indebted in the amount of $7,344.22 as stated in the proof of claim of Ms. Burlingame-Fath. To the extent that the Debtor objects to this amount, the Court overrules the Debtor's objection. The Court also concludes that the amount claimed by Ms. Burlingame-Fath is not in the nature of alimony, maintenance, or support; thus, the obligation owed

by the Debtor to Ms. Burlingame-Fath is not a domestic support obligation as defined by 11 U.S.C. § 101(14A). Accordingly, the Debtor's objection to the priority status claimed by Ms. Burlingame-Fath is sustained.

**Signed on March 01, 2010**

          **/s/ Daniel S. Opperman**
**Daniel S. Opperman**
**United States Bankruptcy Judge**